**UNITED STATES DISTRICT COURT**
**IN THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| Amanda Marie Nelson,<br><br>        Plaintiff,<br>v.<br><br>St. Catherine University and Quigley Law Firm, PLLC,<br><br>        Defendants. | Case No. 0:23-cv-02222-SRN-TNL<br><br>**DEFENDANT QUIGLEY LAW FIRM'S SUPPLEMENTAL MEMORANDUM SUPPORTING MOTION TO DISMISS** |

Pursuant to the Court's order following the December 20, 2023, hearing on QLF's motion to dismiss [*see* Doc. No. 49], Defendant Quigley Law Firm, PLLC ("QLF"), submits the following supplemental briefing in support of its Motion to Dismiss the Amended Complaint [*see* Doc. No. 28].

### Introduction

At the hearing of this motion Ms. Nelson's counsel attempted to throw a fourth-quarter "Hail Mary" pass to stave off dismissal of the FDCPA claim and reference of the automatic stay claim to the bankruptcy court by arguing a theory premised upon 15 U.S.C. § 1692c(a)(2)—for the first time. This eleventh hour effort is procedurally improper for Ms. Nelson's counsel's failure to raise this issue in any briefing that preceded the December 20, 2023, motion hearing.

Even if considered, the attempted § 1692c(a)(2) claim fails as a matter of law because (1) the record confirms QLF did not have notice that Walker & Walker PLLC, or any other lawyer, represented Ms. Nelson in the Dakota County collection action; and (2)

because the now-challenged letter QLF sent to Dakota County court administration, copying Ms. Nelson, was not a "communication" subject to the FDCPA.

Furthermore, and in any event, even if the Court were to find that the complaint plausibly alleges a § 1692c(a)(2) claim, any unresolved questions regarding notice; the involvement of Ms. Nelson's bankruptcy attorneys, Walker & Walker PLLC, in the Dakota County collection action (or lack thereof); and QLF's intentions in sending the now-challenged letter are more properly decided by the bankruptcy court, for the reasons set forth in QLF's principle and reply memoranda previously filed in support of this motion.

Accordingly, QLF respectfully maintains its request for relief as set forth in its motion to dismiss Ms. Nelson's complaint.

## Relevant Background[1]

The following facts inform this supplemental memorandum.

On May 12, 2023, Ms. Nelson filed a bankruptcy petition through Walker & Walker PLLC. [Compl. ¶ 11; Newman Dec. Ex. K.] Walker & Walker PLLC did not schedule QLF as a party to receive notice of the bankruptcy filing to QLF (and, as a result, QLF did not receive notice). [Newman Dec. Ex. K.]

On June 14, 2023, following Ms. Nelson's alleged detention and release, the Dakota County court set a hearing on for July 17, 2023, in the collection action. [Newman Dec. Ex. N.]

---

[1] QLF incorporates by reference the background statements made in its principal and reply memoranda, but outlines here the salient points as they impact the proffered § 1692c(a)(2) theory for the Court's ease of reference. [*See* Doc. Nos. 30, 48.]

On June 23, 2023, Walker & Walker PLLC informed QLF of the bankruptcy filing for the first time by email, which provided:



**Notice of Bankruptcy Filing**

The following individuals have filed for bankruptcy protection and are now protected by the automatic stay provided for in 11 U.S.C. § 362.

Date of Filing Bankruptcy: 05/12/2023
Bankruptcy Case Number: 23-30954

Name of Debtor 1: Amanda Nelson
Social Security Number of Debtor 1: \*\*\*-\*\*6985
Date of Birth of Debtor 1: 1982-10-25

Name of Debtor 2 (if any):
Social Security Number of Debtor 2 (if any):
Date of Birth of Debtor 2 (if any):

The automatic stay is a federal law that makes any act to collect a debt or control property of the Debtors illegal. It is effective against all creditors.

ACTS PROHIBITED BY THE AUTOMATIC STAY INCLUDE:

- Wage garnishment
- Bank Levy
- Advancement of court processes to gain or enforce a judgment
- Repossession
- Foreclosure
- Collection Calls or Letters

If you feel that this does not apply to you or your organization, then

> please reply to this email immediately or call (612) 824-4357. If you have an attorney to represent you in this matter, then please provide your attorney's contact info.
>
> Sent on Behalf of Walker and Walker Law Offices, PLLC
> /s/ Andrew C. Walker
> Managing Partner.
> MN Attorney Registration Number 392525

[Compl. ¶ 18; Newman Dec. Ex. O.[2]]

This "notice" contained no reference to the Dakota County collection action, let alone even the *suggestion* that attorney Andrew Walker or his law firm represented Ms. Nelson in the collection action or with respect to Ms. Nelson's debt to St. Catherine's. Indeed, neither attorney Walker nor anyone from his firm ever noticed an appearance in the collection action, filed any documents or pleadings in that matter, or attended any hearings in that case. [Newman Dec. Ex. A.]

As a result, QLF notified Dakota County court administration by letter copied to Ms. Nelson that attorney Sarah Quigley would not be attending the July 17, 2023, hearing, in part out of concern for compliance with the automatic stay. [Newman Dec. Exs. A, P.] No one from Walker & Walker PLLC, or any other law firm representing Ms. Nelson, responded to this information or took any action in response. [Newman Dec. Ex. A.]

---

[2] As with the other documents QLF submitted relating to the Dakota County collection action in support of this motion, the Court likewise may consider this email on QLF's motion to dismiss because it is referenced in, though not attached to, Ms. Nelson's complaint. In other words, the email does not contradict the complaint and is in fact "embraced by the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (cleaned up and citations omitted) ("the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint as well as materials that are necessarily embraced by the pleadings.").

On July 17, 2023, attorney **Thomas J. Lyons, Jr.** (not attorney Walker or anyone from his firm) appeared for Ms. Nelson at the Dakota County hearing, without first noticing his appearance or informing QLF that he represented Ms. Nelson. [Newman Dec. Ex. A.]

## Argument

At the December 20, 2024, hearing on QLF's motion to dismiss the instant action, Ms. Nelson's counsel argued, for the first time, that her purported § 1692c(a)(2) theory prevents dismissal. That argument fails first and foremost because it is waived. Furthermore, dismissal remains appropriate notwithstanding this "ambush" because:

- While it is true that the FDCPA prohibits a debt collector from communicating directly with a represented party, the Dakota County docket confirms that Ms. Nelson was <u>not</u> represented in that action and that QLF had no knowledge of any such purported representation; and

- In any event, the letter was not a "communication" subject to the FDCPA.

In addition to the foregoing bases, QLF further reiterates its request for dismissal of this "new" theory of liability for the same reasons outlined in its earlier briefing supporting this motion.

## II. Ms. Nelson Waived Her Proffered § 1692c(a)(2) Theory

It is axiomatic that a party may not raise an argument for the first time at oral argument. Indeed, the Eighth Circuit and courts in this district routinely find any such argument <u>waived</u>:

- *DISH Network Services, LLC v. Laducer*, 725 F.3d 877, 883 (8th Cir. 2013) (rejecting argument raised for the first time at oral argument);

- *Twin Cities Galleries, LLC v. Media Arts Group, Inc.*, 476 F.3d 598, 602, n.1 (8th Cir. 2007) (issue not briefed and raised for first time at oral argument waived);

- *United States v. Mitchell*, 31 F.3d 628, 633 n.1 (8th Cir. 1994) (same);

- *Entrust Datacard Corporation v. Atlantic Zeiser GmbH*, No. 15-cv-4260, 2016 WL 10952822, at *5 (D. Minn. Aug. 4, 2016) (same)

Here, Ms. Nelson failed to raise § 1692c in her briefing as a basis upon which the Court ought deny QLF's motion to dismiss the FDCPA claim. [*See gen.* Doc. No. 44.] Instead, Ms. Nelson's counsel elected to ambush QLF with this issue for the first time at the December 20, 2023, hearing. As a result, the argument is waived and the Court is under no obligation to consider it as a reason to deny QLF's motion.

**III.   The Un-Briefed § 1692c(a)(2) Theory Does Not Prevent Dismissal of the FDCPA Claim On QLF's Motion**

Should the Court consider the § 1692c(a)(2) theory despite Ms. Nelson's failure to properly raise or argue it, the theory nonetheless fails to present any basis for avoiding dismissal of the FDCPA claim, as already argued at length in QLF's principal and reply memoranda. [*See* Doc. Nos. 30, 48.]

In the amended complaint, Ms. Nelson alleges:

> 42.   Further, Defendant Quigley's July 12, 2023, communication to the Dakota County Court referencing the collection lawsuit was sent directly to Plaintiff, in violation of 15 U.S.C. §1692c, when it knew that Plaintiff was represented by an attorney.

[Doc. No. 26 ¶ 42.]

The FDCPA, in relevant part, prohibits a debt collector from communicating directly with a represented consumer under the following circumstances:

> **(a) Communication with the consumer generally**
>
> > Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not **communicate** with a consumer **in connection with the collection of any debt** --
> >
> > > (2) if the debt collector knows the consumer is represented by an attorney **with respect to such debt** and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer ….

15 U.S.C. § 1692c(a)(2) (emphasis added).

As one court—in considering a purported § 1692c(a)(2) claim in connection with the consumer's bankruptcy filing—put it:

> Whether [plaintiff] is entitled to recovery under § 1692c(a)(2) of the FDCPA depends upon whether she can establish two facts. First, [plaintiff] must prove that prior to the [collector's] mailing of the single collection letter, she was represented by an attorney **with respect to the debt owed to [the creditor]**. Second, [plaintiff] must prove that prior to the defendant's sending the collection letter, the defendant had 'actual knowledge' that [plaintiff was represented by an attorney **with respect to the … debt**.

*Hubbard v. National Bond & Collection Associates, Inc.*, 126 B.R. 422, 426 (D. Del. 1991) (emphasis added and citing FTC Official Staff Commentary § 805(a)(2), 53 Fed.Reg. 50097-02, 1988 WL 269068 (1988); other citations omitted).

Furthermore, as discussed below, the challenged correspondence must be a "communication" subject to the FDCPA in order to be actionable under § 1692c(a)(2).

### A. QLF Did Not Have Notice that Counsel Represented Plaintiff in the Collection Action (Likely Because She Had None)

Courts considering purported theories of FDCPA liability premised upon direct contact with a represented consumer have rejected the claim Ms. Nelson attempts to lodge under the circumstances presented in this matter.

The vague and opaque "notice" email that Walker & Walker PLLC sent to QLF hearing made no reference to that firm's representation of Ms. Nelson in **any** proceeding, let alone in the Dakota County collection litigation or with respect to the St. Catherine's debt at issue in that matter. [Newman Dec. Ex. O.]

Nor could QLF surmise any such representation because no one from Walker & Walker PLLC (or any other law firm) ever noticed an appearance in the collection litigation

- 8 -

for Ms. Nelson, or otherwise appeared or participated in those proceedings on her behalf (until attorney Lyons appeared, unannounced, at the July 17, 2023, hearing).

The *Hubbard* court's analysis in support of its order dismissing the consumer's attempted § 1692c(a)(2) claim is instructive here:

> The plaintiff has done no more than show that a UAW attorney represented the plaintiff during the filing of her bankruptcy petition. (D.I. 21 at 5). It is undisputed that [the collector] was unaware of the plaintiff's bankruptcy, and at the very least, did not have a copy of the bankruptcy petition from which to discover the name of [consumer's] attorney. The plaintiff's argument is that the defendant should have discovered the bankruptcy and then sought a copy of the petition from which to discover the name of the attorney that represented [consumer]. **This argument appears to suggest that some kind of "constructive knowledge" existed on the part of the defendant, and that "constructive knowledge" is sufficient for § 1692c(a)(2) purposes. The Court rejects this argument.** *Accord,* **FTC Commentary ("The creditor's knowledge that the consumer has an attorney is not automatically imputed to the debt collector.") Section 1692c(a)(2) requires "actual knowledge" and the plaintiff has not provided any facts that suggest the defendant actually knew [plaintiff] was represented by the UAW Legal Services Plan before the collection letter was sent**.
>
> **Even if [the collector] knew that the UAW had represented [consumer] during the filing of her bankruptcy, the Court doubts that this previous representation would have satisfied the requirement of § 1692c(a)(2) that the plaintiff be represented with respect to the debt in dispute**. Barbara James, Esq. of the UAW assisted [consumer] in the filing of a bankruptcy petition more than one year before the events giving rise to the present cause of action. **The fact that a debtor retained an attorney more than a year previously, for the specific task of filling out a bankruptcy petition, does not suggest that the same attorney has been continuously retained to represent the debtor in all matters with her creditors. The Court's conclusion that [consumer's] bankruptcy and her FDCPA suit are distinguishable and involve separate legal representations, is supported by the fact that different UAW attorneys represented [consumer] with respect to each matter**. From the evidence provided by the [consumer]f, it cannot be established that the UAW was retained by [consumer] with respect to the [creditor's] debt, prior to the December 11 communication.

- 9 -

*Id*. at 426-427 (emphasis added).

The *Hubbard* court's analysis is consonant with the Fair Trade Commission's official staff commentary to § 1692c(a)(2), which, in its entirety, provides:

> *2. Contact limited to consumer's attorney (section 805(a))*
>
> Public commenters argued forcefully that comment 3, stating that a debt collector could not communicate with a consumer who stated that an attorney would represent him with respect to all future debts, would place an unreasonable burden on the debt collector. They reported that the standard operating procedure for many debt collectors is to close the consumer's file once a debt is collected or efforts to collect it cease. Should a second debt from the same consumer be assigned to the debt collector, therefore, the collector might be unaware of the previous file on that debtor and would not know whether the consumer was represented by an attorney with respect to all future debts. These commenters contend that the only way a debt collector could comply with our proposed interpretation would be to check every new debtor file against the closed files to determine whether (1) the collector had ever previously contacted that debtor, (2) the debtor had previously been represented by an attorney, and (2) the debtor had given the collector a blanket notice of legal representation. They suggested instead that, when contacted about a subsequent debt, the consumer should simply inform the debt collector that he is still represented by an attorney and that the debt collector should contact the attorney.
>
> The FTC staff now believes that the portion of comment 3 in the proposed Commentary regarding future representation is simply not supported by the statute, or envisioned by its legislative history. Furthermore, it could easily be the case that the attorney in fact no longer represents the consumer. Accordingly, the staff has modified the second paragraph of comment 3 to section 805(a) to replace the broad reference to "all current and future debts" with the more appropriate "other debts."
>
> […]
>
> **The creditor's knowledge that the consumer has an attorney is not automatically imputed to the debt collector**.

FTC Commentary at 53 FR 500097-02, 50098, 50104 (emphasis added).

Other courts have rejected attempted § 1692c(a)(2) claims consistent with the *Hubbard* court's reasoning:

- Collector's "one additional question" to represented debtor, which constituted a "legitimate business inquiry … was not so extensive as to have been the kind of additional communication prohibited by subsection c(a)(2)," which "was designed to prevent repeated phone calls and letters directly to the debtor after the debt collector knows that the person to be represented by an attorney. This did not happen in the instant case." *Bieber v. Associated Collection Services, Inc.*, 631 F.Supp. 1410, 1417 (D. Kan. 1986);

- Dismissal of attempted § 1692c(a)(2) claim affirmed where the consumer's attorney notified collector that he represented consumer with respect to particular debt, and collector then sent collection notices on two subsequently placed debts directly to the consumer. *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991), abrogated on other grounds by *Riccio v. Sentry Credit, Inc.*, 954 F.3d 582 (3d Cir. 2020)

- Dismissal of purported § 1692c(a)(2) claim where collector did not know of attorney's representation at the time it sent communication directly to the consumer. *Robinson v. Transworld Sys., Inc.*, 876 F.Supp. 385, 390 (N.D.N.Y. 1995).

- The FDCPA "does not require a debt collector to assume that an attorney representing a consumer with respect to one or more specific debts represents that consumer with respect to all obligations which are owed by the consumer," nor does the Act place "duty to inquire" upon the debt collector in that regard. *Goodman v. Southern Credit Recovery, Inc.*, No. 97-cv-2385, No. 98-cv-1174, 1999 WL 14004, at *5 (E.D. La. Jan. 8, 1999).

- No viable § 1692c(a)(2) claim where consumer's attorney sent letter to debt collector requesting return of garnished funds, "**but did not state that [the attorney] was representing plaintiff with respect to the debt**, and, "more importantly[,] **did not file an appearance on behalf of plaintiff at the exemption hearing** …." *Shrestha v. State Credit Adjustment Bureau, Inc.*, 117 F.Supp.2d 142, 146 (D. Conn. 2000).

This persuasive authority supports dismissal of the attempted § 1692c(a)(2) claim as a matter of law.

Nothing alleged in the complaint or set forth in the record of the Dakota County collection action even *suggests* that QLF knew or had reason to know that counsel represented Ms. Nelson with respect to the St. Catherine's debt or the Dakota County collection litigation when QLF filed the July 12, 2023, letter with Dakota County, copying Ms. Nelson.

To the contrary, no attorney advised QLF they represented Ms. Nelson for purpose of the St. Catherine's debt in the collection action, or even bothered to file a notice of appearance in the Dakota County case.

Indeed, there is no "link" between the Walker & Walker firm's "notice" sent to QLF and the counsel who ultimately appeared at the July 17, 2023, hearing (attorney Lyons who, again, never noticed his appearance in that matter). *Hubbard* at 496 ("[t]he Court's conclusion that [consumer's] bankruptcy and her FDCPA suit are distinguishable and involve separate legal representations, is supported by the fact that different UAW attorneys represented [consumer] with respect to each matter.")

Furthermore, the above authority confirms that any alleged notice of Ms. Nelson's bankruptcy delivered to St. Catherine's is <u>not</u> imputed to QLF.

Because QLF had no notice that anyone represented Ms. Nelson with respect to the St. Catherine's debt, let alone the collection litigation, at the time the now-challenged letter was filed in the Dakota County matter, the attempted § 1692c(a)(2) claim fails as a matter of law.

### B. The July 12, 2023, letter, directed to the Dakota County court for informational purposes, was not a "communication" subject to the FDCPA

Assuming for argument's sake that counsel represented Ms. Nelson in the Dakota County collection action as of July 12, 2023, the now-challenged letter filed with that court and copied to Ms. Nelson must constitute a "communication" subject to the FDCPA, the "animating purpose" of which "must be to induce payment by the debtor," in order for a viable claim to lie. *Id.*; *Heinz v. Carrington Mortg. Servs., LLC*, 423 F.Supp.3d 693, 702-03 (D. Minn. Nov. 19, 2019), *aff'd* at 3 F.4th 1107 (8th Cir. 2021).

But the letter was <u>not</u> a "communication." Therefore, the attempted § 1692c(a)(2) claim fails as a matter of law on this alternate basis.

#### 1. The FDCPA only applies to "communications"

For FDCPA purposes a "communication means the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2) (quotation marks omitted).

Critically, "it is … clear that the statute does not apply to *every* communication between a debt collector and a debtor." *Klein v. Stellar Recovery, Inc.*, No. 2017 WL 4551526, at *3 (E.D. Mo. Oct. 12, 2017) (cleaned up and citing *Sumner v. Smith*, No. 11-cv-12, 2012 WL 4711995, at *4 (E.D. Tenn. Oct. 3, 2012).

Pursuant to § 1692c(a)(2), such direct "communication" with a represented consumer is only prohibited to the extent it is "in connection with the collection of any debt …." *Id.*

### 2. The "animating purpose" test

The Eighth Circuit has held that, "for a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor." *McIvor v. Credit Control Servs., Inc.*, 773 F.3d 909, 914 (8th Cir. 2014); *Heinz*, 3 F.4th at 1107.

"In determining whether a particular communication was made in connection with the collection of a debt, courts examine the relationship between the parties, the purpose and context of the communication as a whole, and whether there is an explicit demand for payment." *Hudson v. Medicredit, Inc.*, No. , 2018 WL 13788643, at *4 (E.D. Mo. Mar. 19, 2018) (citing *Backlund v. Messerli & Kramer, P.A.*, 964 F.Supp.2d 1010, 1014 (D. Minn. 2013)).

In addition, "[t]he language used in the communication is also a factor in determining whether it was made in connection with the collection of a debt." *Id.* (citing *Thompson v. BAC Home Loans Servicing, L.P.*, No. 09-cv-311, 2010 WL 1286747, at *4 (N.D. Ind. Mar. 26, 2010); *Bieber v. Associated Collection Servs., Inc.*, 631 F.Supp. 1410, 1417 (D. Kan. 1986); *Salsbury v. Trac A Chec, Inc.*, 365 F.Supp.2d 939, 941 (C.D. Ill. 2005)).

Crucially, "'[w]here a communication is clearly informational and does not demand payment or discuss the specifics of an underlying debt, it does not violate the FDCPA.'" *Klein*, 2017 WL 4551526, at *3 (quoting *Goodin v. Bank of Am., N.A.*, 114 F.Supp.3d 1197, 1205 (M.D. Fla. 2015); *Bailey v. Sec. Nat. Servicing Corp.*, 154 F.3d 384, 388-89 (7th Cir. 1998)).

This Court has previously dismissed an attempted § 1692c(a)(2) claim on the grounds that the defendant's challenged correspondence—which did not discuss repayment terms, demand payment, or make threat of any further collection proceedings—was not a "communication." *See Heinz v. Carrington Mortg., Servs., LLC*, 3 F.4th 1107 (8th Cir. 2021) (affirming dismissal at 423 F.Supp.2d 693 (D. Minn. Nov. 19, 2019)).

Courts have applied similar reasoning to post-bankruptcy correspondence where the collector's outreach is not made "in connection with the collection of a debt," for example, during a phone call:

> [The collector] attests that she made two calls to [the consumer] after learning that he was represented by counsel. The first was a call to [consumer's] home in which she intended to inform him that she had verified the attorney's representation and would not be contacting him again. Because [consumer] was not home, she called his place of employment and left a message for [consumer] to contact her. [The collector] states that she did not make either call with the intention of a collecting the debt, but rather "to be courteous in letting [consumer] know that TAC would not be calling again." [The collector's] affidavit is supported by her collector's notes which indicate that the account was "killed" prior to making the two calls to [consumer]. In response, [consumer] offers no evidence to refute [the collector's] assertions, other than his own statement that he can think of no other reason for Defendants to contact him other than to collect the debt.
>
> […]
>
> [The collector] was merely informing [consumer] that she had confirmed his representation by counsel and would no longer be contacting him. Such communication is not a violation of the FDCPA because it is not in connection with the collection of a debt. Because this court determines Defendants did not violate the statute, the issue of the bona fide error defense needs not be addressed.

*Salsbury v. Trac A Chec, Inc.*, 365 F.Supp.2d 939, 940-42 (C.D. Ill. 2005).

Courts have likewise applied this rationale to post-bankruptcy letters:

> On its face, the [collector] letter is a request for information about plaintiff's bankruptcy status, sent by [the collector] to the plaintiff after learning that plaintiff may have filed for bankruptcy. There is nothing that indicates that this letter is an attempt to collect a debt. Certainly a letter that simply requests bankruptcy information is not the type of letter that can be reasonably placed in the category describing a "communication in connection with the collection of a debt" under the ambit of the FDCPA.

*Buckley v. Bass & Assocs., P.C.*, No. 99-cv-4044, 2000 WL 10065568, at *2-3 (N.D. Ill. July 19, 2000).

### 3. QLF's July 12, 2023, letter contained precisely *zero* indicia of an effort to induce payment from Ms. Nelson

QLF's now-challenged letter reads:

> RE: St. Catherine University vs. Amanda Marie Nelson
> **Court File No: 19HA-CV-17-3814**
> Our File No: 961376
>
> Gentlemen/Ladies:
>
> This letter is not being submitted to the Court to violate 11 USC 362, but simply to inform the Court that I will not be attending the hearing scheduled by the Court on 6/14/2023 for a date of 7/17/2023 at 9:00 AM due to a conflict, as I am already scheduled to be in Washington County on another matter at that same time.
>
> Thank you.
>
> Yours very truly,
> /s/ Sarah B. Quigley
> Sarah B. Quigley

[Second Declaration of Patrick D. Newman, Ex. R.]

It is evident from the face of the letter that it merely provided information to Ms. Nelson and the Dakota County court regarding a scheduled hearing. It does not "convey[]

… information regarding a debt directly or indirectly the debt" to anyone. 15 U.S.C. § 1692a(2).

Nor can the letter be categorized as an effort to induce payment from Ms. Nelson. It does not reference an account, an amount, a payment deadline, or any verbiage that could possibly be construed as a request for repayment or a threat to take additional collection action. To the contrary, QLF expressly noted that it was taking efforts to abide by the automatic stay imposed by 11 U.S.C. § 362—i.e., the very antithesis of an effort to collect.

In short, even if QLF somehow had knowledge that Ms. Nelson was represented in the Dakota County collection litigation, the now-challenged letter QLF filed in the Dakota County collection action (copying Ms. Nelson) is not subject to the FDCPA.

The attempted § 1692c(a)(2) claim fails as a matter of law for this additional reason.

### III. Even If Ms. Nelson's 1692c(a)(2) Claim Was Not Susceptible To Dismissal On The Grounds Discussed Above, It Nonetheless Fails For The Same Reasons Articulated In QLF's Principle And Reply Memoranda

As noted in QLF's prior memoranda, in the event the Court is not persuaded to dismiss the § 1692c(a)(2) claim on the bases discussed above, Supreme Court precedent nonetheless counsels in favor of dismissal.

Allowing the § 1692c(a)(2) claim to proceed will require "an ordinary civil court applying the Act to determine answers to … bankruptcy-related questions" regarding Walker & Walker PLLC's involvement (or lack thereof) in the Dakota County collection litigation, as well as QLF's intentions in filing the now-challenged July 12, 2023, letter. *Johnson v. Midland Funding, LLC*, 581 U.S. 224 (2017).

Doing so would "upset [the] delicate balance" Congress created between the FDCPA (enacted to prevent consumer bankruptcies) and the Bankruptcy Code (establishing a balance of debtor and creditor protections and obligations where bankruptcy cannot be avoided).

Accordingly, QLF adopts the arguments set forth in its prior memoranda of law as additional bases supporting dismissal of the attempted § 1692c(a)(2) claim as a matter of law.

## CONCLUSION

For the reasons discussed herein, as well as QLF's principal and reply memoranda previously filed in support of QLF's motion to dismiss, dismissal of Ms. Nelson's complaint, in its entirety (including the attempted § 1692c(a)(2) claim), and with prejudice, remains warranted.

**BASSFORD REMELE**
*A Professional Association*

Date:  January 16, 2024

By */s/ Patrick D. Newman*_____
Patrick D. Newman (#395864)
100 South 5th Street, Suite 1500
Minneapolis, MN 55402-1254
Telephone:   (612) 333-3000
Facsimile:   (612) 333-8829
pnewman@bassford.com
mgustafson@bassford.com

*Attorneys for Defendant Quigley Law, P.A.*