## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Amanda Marie Nelson, | Case No. 23-cv-2222 |
| Plaintiff, | |
| v. | **ORDER** |
| St. Catherine University, and Quigley Law Firm, PLLC, | |
| Defendants. | |

Carter B. Lyons and Thomas J. Lyons, Jr., Consumer Justice Center P.A., 367 Commerce Court, Vadnais Heights, MN 55127, for the Plaintiff.

John C. Gunderson, Donohue McKenney, LTD, 11222 86th Avenue N, Maple Grove, MN 55369, and Thomas B. Wieser, Meier, Kennedy & Quinn, Chartered, 445 Minnesota Street, Suite 2200, St. Paul, MN 55101, for Defendant St. Catherine University.

Kiralyn Locke and Patrick D. Newman, Bassford Remele PA, 100 South 5th Street, Suite 1500, Minneapolis, MN 55402, for Defendant Quigley Law Firm, PLLC.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant Quigley Law Firm, PLLC ("QLF")'s Motion to Dismiss [Doc. No. 28], and on Defendant St. Catherine University ("the University")'s Motion to Dismiss [Doc. No. 32]. Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court denies both motions.

1

## I.      BACKGROUND

### A.      Factual Allegations

At the motion to dismiss stage, the Court accepts the factual allegations in the complaint as true and draws all reasonable inferences in the nonmovant's favor. *Cook v. George's, Inc.*, 952 F.3d 935, 938 (8th Cir. 2020). The Court "generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Glow in One Mini Golf, LLC v. Walz*, 37 F.4th 1365, 1470 (8th Cir. 2022). Relevant to the issues before the Court, Ms. Nelson makes the following factual allegations.

The Defendants initiated a collection action against Ms. Nelson for a debt incurred while she was a student at the University, and filed the action in Dakota County District Court in October 2017. (Am. Compl. [Doc. No. 26] ¶¶ 7–9.)

On May 12, 2023, Ms. Nelson commenced a Chapter 7 bankruptcy case. (*Id*. ¶ 11.) The United States Bankruptcy Court, District of Minnesota, mailed a notice to the University of the bankruptcy action via first class mail on May 17, 2023. (*Id*. ¶ 12.)

On or about May 16, 2023, in response to Ms. Nelson's failure to appear or complete a financial disclosure form in the open collection action, the Dakota County District Court issued a bench warrant for her arrest. (*Id*. ¶ 17.) The Defendants did nothing to dismiss or stay the collection action, to quash the pending bench warrant, or to alert the issuing court that Ms. Nelson had filed for bankruptcy. (*Id*. ¶¶ 19–20.) Ms. Nelson was arrested on the warrant, booked, and fingerprinted on May 31, 2023. (*Id*. ¶ 21.)

2

The conditions of the warrant were that Ms. Nelson should be released upon either (1) posting a cash bail, or (2) completing a financial disclosure form pursuant to a demand for disclosure that had been issued on January 12, 2023 in the collection action. (*Id*. ¶ 18.) After Ms. Nelson was booked at the Dakota County Jail, the arresting officer informed her that she would not have to stay the night if she completed the financial disclosure form. (*Id*. ¶ 30.) Ms. Nelson completed the form and was released at 1:30 a.m. on June 1, 2023, approximately three hours after her arrest. (*Id*. ¶¶ 28–32.)

Ms. Nelson added Defendant QLF to the bankruptcy matter on June 8, 2023. (*Id*. ¶ 35.) On June 23, 2023, her bankruptcy counsel sent an email to the Defendants providing more information on the bankruptcy matter. (*Id*. ¶ 37.)

The Dakota County Sheriff sent an executed financial disclosure form to the Defendants on June 2, 2023. (*Id*. ¶ 34.) On June 14, 2023, the Dakota County District Court issued a Notice of Remote Zoom hearing set for July 17, 2023 in the collection matter, requiring attendance by all parties. (*Id*. ¶ 36.) On July 12, 2023, QLF notified the district court that its attorney had a scheduling conflict and would not be able to attend the hearing. (*Id*. ¶ 40.) The July 12, 2023 communication was sent directly to Ms. Nelson, without copying her counsel. (*Id*. ¶ 42.)

The Defendants did not at any point inform the district court of Ms. Nelson's bankruptcy matter, or take any action to dismiss, suspend, or stay the collection action. (*Id*. ¶ 46.) Ms. Nelson hired counsel to appear at the remote hearing set in the collection action on July 17, 2023. (*Id*. ¶ 48.) At that hearing, her counsel notified the court of the pending

bankruptcy case. (*Id.*) The district court immediately stayed the collection action proceedings. (*Id.* ¶ 49.)

The delay in staying the collection action resulted in Ms. Nelson incurring over $1,000 in legal fees and costs. (*Id.*) She further alleges that she suffered emotional distress, fear, anxiety, and loss of sleep due to the Defendants' continued efforts to collect on her debt. (*Id.* ¶ 50.)

### B.   The Present Lawsuit

Ms. Nelson initiated these proceedings by filing a Complaint on July 26, 2023. (Compl. [Doc. No. 1].) She amended her Complaint on September 9, 2023. (Am. Compl.) In her Amended Complaint, she alleges three counts. Count 1 alleges violations of the automatic stay provision of the United States Bankruptcy Code, 11 U.S.C. § 362, against both Defendants. (*Id.* ¶¶ 51–57.) Count 2 alleges violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, against QLF. (*Id.* ¶¶ 58–61.) Count 3 alleges the common law tort of Intrusion Upon Seclusion against both Defendants (*Id.* ¶¶ 62–66.)

The Defendants filed their respective motions to dismiss the Amended Complaint on October 13, 2023 [Doc. Nos. 28, 32]. Both Defendants argue that the Court lacks subject matter jurisdiction to consider Ms. Nelson's claim under Count 1, and that it should be dismissed without prejudice, or alternatively referred to the United States Bankruptcy Court. QLF argues further that Ms. Nelson's FDCPA claim under Count 2 is precluded by the Bankruptcy Code to the extent that it is predicated on the alleged automatic stay

violation. Both Defendants request that, should the Court dismiss the first two counts, it decline to exercise supplemental jurisdiction over the state law tort claim under Count 3.

The parties argued the motions before the Court on December 20, 2023. (*See* Minute Entry [Doc. No. 49].) Following the hearing, the Court requested supplemental briefing from QLF and Ms. Nelson. In its supplemental briefing, QLF argues that, to the extent Ms. Nelson's FDCPA claim relies on alleged improper communications, the Court should dismiss her claim because she fails to adequately plead that any communication occurred or that QLF had notice of her legal representation.

## II.   DISCUSSION

### A.   Legal Standards

The Defendants move the Court to dismiss Ms. Nelson's Amended Complaint pursuant to Federal Rules of Civil Procedure, Rule 12(b)(1) for lack of subject matter jurisdiction, and Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

#### 1.   Challenge to Subject Matter Jurisdiction

Federal district courts have subject matter jurisdiction over civil actions that involve a federal question or diversity of citizenship. *See* 28 U.S.C. §§ 1331–32. Federal question jurisdiction exists when the action arises "under the Constitution, laws, or treaties of the United States." *Id*. §1331.

In deciding a motion under Rule 12(b)(1), the Court must first distinguish between a facial attack and a factual attack on its subject matter jurisdiction. *Croyle by and through Croyle v. United States*, 908 F.3d 377, 380 (8th Cir. 2018) (citing *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). In a factual attack, the issue of jurisdiction is bound

5

up with the merits of the case, whereas in a facial attack the issue of jurisdiction can be resolved on the face of the pleadings. *Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir. 2018).

Here, the Defendants raise a purely legal challenge to the Court's subject matter jurisdiction, arguing that an Article III district court lacks jurisdiction to hear alleged violations of the United States Bankruptcy Code. The Court finds that this is a facial attack, capable of resolution on the face of the pleadings. Accordingly, the Court "restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Davis v. Anthony, Inc.*, 886 F.3d 674, 679 (8th Cir. 2018). The plaintiff has the burden of proving subject matter jurisdiction. *Id*.

### 2.   Alleged Failure to State a Claim

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court accepts the facts alleged in the complaint as true and views those allegations in the light most favorable to the plaintiff. *See Dormani v. Target Corp.*, 970 F.3d 910, 914 (8th Cir. 2020). However, the Court need not accept a plaintiff's conclusory statements or legal conclusions. *Retro Television Network, Inc. v. Luken Communications, LLC*, 696 F.3d 766, 768–69 (8th Cir. 2012). The Court ordinarily does not consider matters outside of the pleadings on a Rule 12(b)(6) motion, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings. *Glow in One Mini Golf*, 37 F.4th at 1370.

6

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The facts alleged must have enough specificity "to raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 555.

### B.    Facial Attack on this Court's Subject Matter Jurisdiction

"[T]he district courts of the United States have 'original and exclusive jurisdiction of all cases under title 11.'" *Stern v. Marshall*, 564 U.S. 462, 473 (2011) (quoting 28 U.S.C. § 1334(a)). "District courts may refer any or all such proceedings to the bankruptcy judges of their districts." *Id.*; *also* 28 U.S.C. § 157. This district's local rules state that all "bankruptcy cases and proceedings" are referred to the bankruptcy judges. Minn. Loc. R. Bankr. P. 1070–1.

The Supreme Court held in *Stern* that § 157, which allows district courts to enact rules like this district's local rules for referring cases to bankruptcy courts, "does not have the hallmarks of a jurisdictional decree." 564 U.S. at 480. Instead, § 157 "allocates the authority to enter final judgment between the bankruptcy court and the district court. That allocation does not implicate questions of subject matter jurisdiction." *Id.*

The United States Courts of Appeals for the Third, Fourth, Seventh, and Eleventh Circuit have all held that district court judges have subject matter jurisdiction to entertain an action for a violation of an automatic stay under the Bankruptcy Code. *See Potter v. Newkirk*, 802 Fed. Appx. 696, 698 (3d Cir. 2020); *Houck v. Substitute Trustee Services, Inc.*, 791 F.3d 473, 481 (4th Cir. 2015); *Justice Cometh, Ltd. v. Lambert*, 426 F.3d 1342,

1343 (11th Cir. 2005) (per curium); *Price v. Rochford*, 947 F.2d 829, 832 n.1 (7th Cir. 1991). Additionally, this Court, and other courts within this district, have previously observed that district courts retain original jurisdiction over actions arising under the Bankruptcy Code. *See Kelley v. JPMorgan Chase & Co.*, 464 B.R. 854, 858–61 (D. Minn. 2011) (Nelson, J.) (finding that a district court has discretion to withdraw any proceeding referred to a bankruptcy court); *also Reinhardt v. Rent-A-Center West, Inc.*, No. 21-cv-2158 (NEB/LIB), 2022 WL 161571, at *2 n. 3 (D. Minn. Jan. 18, 2022); *Barton v. Ocwen Loan Servicing LLC*, No. 12-cv-162 (MJD/JJG), 2012 WL 4449860, at *9 (D. Minn. Sept. 26, 2012) (retaining jurisdiction).

Against this authority, the Defendants rely on a 2010 decision from this district in which the court (Kyle, J.) concluded that the "weight of the authority" supports a finding that district courts have only appellate authority over actions arising under the Bankruptcy Code. *See Carnes v. IndyMac Mortg. Servs.*, No. 10-cv-3005 (RHK/SRN), 2010 WL 5276987, at *3 (D. Minn. Dec. 17, 2010); *also Zimmerman v. Bellows*, 988 F. Supp. 2d 1026 (D. Minn. 2013) (Kyle, J.) (determining that the district court lacked jurisdiction to hear a claim for violating the automatic stay provision based on his prior holding in *Carnes*). Judge Kyle's analysis in *Carnes* relied primarily on a 2001 case from the Second Circuit, *Eastern Equipment & Servs. Corp. v. Factory Point Nat'l Bank, Bennington*, 236 F.3d 117 (2d Cir. 2001), which held the same.

The Second Circuit has recently observed that "our *Eastern Equipment* decision failed to address the contradiction between our holding and the plain language of 28 U.S.C. § 1334(a), which provides that '[e]xcept as provided in subsection (b) of this section, the

district courts shall have original and exclusive jurisdiction of all cases under title 11.' Thus, our holding in *Eastern Equipment* has been criticized by many of our sister circuits." *Inn World Report, Inc. v. MB Financial Bank NA*, 2022 WL 17841529, at *2 (2d Cir. 2022) (referring to *Potter*, 802 F. App'x at 699–700; *Houck*, 791 F.3d at 481–82; *Price*, 947 F.2d at 832 & n.1; and *Justice Cometh*, 426 F.3d at 1343). The Second Circuit in *Inn World Report* acknowledged that the Supreme Court's holding in *Stern* necessarily abrogates its ruling in *Eastern Equipment*, but ultimately found that it did not need to reach the issue because the district court in *Inn World Report* lacked jurisdiction on separate grounds. *Id.*

The Court finds that under the plain language of 28 U.S.C. §§ 1334(a) and 157, and the United States Supreme Court's holding in *Stern*, this Court has jurisdiction to entertain an action brought for an alleged violation of the Bankruptcy Code's automatic stay provision. The overwhelming weight of authority, both within and beyond this district, supports this ruling.

## C.   Allegations of Violations of the FDCPA

Ms. Nelson's FDCPA claim alleges violations of several provisions of the statute: 15 U.S.C. §§ 1692c (communication in connection with debt collection); 1692d (harassment or abuse); 1692e (false or misleading representations); 1692e(5) (threat to take action), and; 1692f (unfair practices). (*See* Am. Compl. ¶¶ 21, 42, 45–46.) Defendant QLF argues that the alleged violations of §§ 1692d, 1692e, 1692e(5), and 1692f are each predicated on alleged violations of the automatic stay provision of the Bankruptcy Code, and the Bankruptcy Code provides the exclusive remedy for such violations. QLF further

argues that the Amended Complaint fails to allege facts sufficient to state a claim under § 1692c. The Court considers each argument in turn.

### 1.     FDCPA Claims Predicated on an Automatic Stay Violation

QLF argues that the U.S. Bankruptcy Code provides the sole remedy for violations of its provisions, and that the Court should accordingly dismiss Ms. Nelson's FDCPA claims predicated on any such violations. QLF further argues that the Supreme Court's decision in *Midland Funding, LLC v. Johnson*, 581 U.S. 224 (2017), and its progeny should control the outcome in this case. Ms. Nelson responds that *Midland Funding*'s holding is inapplicable to the violations alleged in the Amended Complaint, and that QLF's disregard for the Bankruptcy Code in the context of debt collection activities resulted in substantial violations of the FDCPA. The parties agree that Ms. Nelson's FDCPA claims under §§ 1692d, 1692e, 1692e(5), and 1692f are predicated on her allegation that the underlying conduct violated the automatic stay provision of the Bankruptcy Code.

### a.     Relevant Caselaw

The Court first considers whether *Midland Funding*, or any other decision by the U.S. Supreme Court or the Eighth Circuit Court of Appeals, resolves this issue.

In *Midland Funding*, the respondent, Johnson, had filed for personal bankruptcy in federal bankruptcy court, and two months later the petitioner, Midland Funding, LLC, filed a "proof of claim" as a part of the proceedings. 581 U.S. at 227. The proof of claim was considered stale, because the original charge for the debt Johnson was alleged to owe was well outside of the relevant statute of limitations. The bankruptcy court accordingly disallowed the claim. Johnson subsequently brought a lawsuit against Midland Funding,

LLC, alleging that by filing a stale proof of claim, it had violated the FDCPA. The Eleventh Circuit held that the filing of a stale proof of claim in a bankruptcy proceeding could qualify as "false," "deceptive," "misleading," "unconscionable," or "unfair" conduct within the meaning of the FDCPA and, therefore, was an actionable claim. *Johnson v. Midland Funding, LLC*, 823 F.3d 1334, 1335 (11th Cir. 2016), *rev'd and remanded*, 581 U.S. 224 (2017), and *vacated*, 868 F.3d 1241 (11th Cir. 2017).

The Supreme Court reversed the Eleventh Circuit, holding that the filing of a stale proof of claim as alleged is not actionable as an FDCPA violation. 581 U.S. at 235. Importantly, however, Justice Sotomayor noted in dissent that "the Court does not hold that the Bankruptcy Code altogether displaces the FDCPA, leaving it with no role to play in bankruptcy proceedings . . . Nor does the majority take a position on whether a debt collector violates the FDCPA by filing suit in an ordinary court to collect a debt it knows is time barred. Instead, the majority concludes, even assuming that such a practice would violate the FDCPA, a debt collector does not violate the Act by doing the same thing in bankruptcy proceedings." *Id.* at 242–43 (Sotomayor, J. dissenting).

The Court finds that this matter is readily distinguishable from *Midland Funding*. Ms. Nelson alleges that QLF violated the automatic stay provision of the Bankruptcy Code by continuing to pursue a collection action in state civil court. (*See* Am. Compl. ¶¶ 19, 39.) Nothing in the *Midland Funding* opinion suggests that activity in a state court collection action, which violates the U.S. Bankruptcy Code's automatic stay provision, could not form the basis of an FDCPA claim.

11

The Eighth Circuit, in an opinion cited approvingly by the Supreme Court in *Midland Funding*, has similarly observed that "[u]nlike defendants facing a collection lawsuit, a bankruptcy debtor is aided by trustees who owe fiduciary duties," and that "these protections against harassment and deception satisfy the relevant concerns of the FDCPA." *Nelson v. Midland Credit Management, Inc.*, 828 F.3d 749, 752 (8th Cir. 2016); *see Midland Funding*, 581 U.S. at 228 (citing *Nelson* and agreeing with its holding that FDCPA liability does not extend to a stale proof of claim filed in a bankruptcy proceeding). Neither the Supreme Court, nor the Eighth Circuit, however, has decided whether FDCPA liability may attach to conduct outside of bankruptcy proceedings, in an environment in which the bankruptcy debtor does not enjoy such protections, that is alleged to violate the Bankruptcy Code's automatic stay provision.

In the absence of binding precedent, the Court considers the decisions of other courts around the country. There is no agreement among the federal circuits as to how to resolve this issue. The Second and Ninth Circuits have ruled that when remedies are available within the Bankruptcy Code itself for violations of the Code, those remedies preclude plaintiffs from seeking to recover under the FDCPA. *See Garfield v. Ocwen Loan Servicing, LLC*, 811 F.3d 86 (2d Cir. 2016) (because the Bankruptcy Code provides a cause of action for automatic stay violations, there can be no actionable FDCPA claim for the same violation); *Maniken v. Peters & Freedman, L.L.P.*, 981 F.3d 712 (9th Cir. 2020) (FDCPA claims cannot be predicated upon a violation of the Bankruptcy Code under Ninth Circuit precedent). The Third and Seventh Circuits, on the other hand, have adopted Ms. Nelson's position, that automatic stay violations may be subject to FDCPA liability. *See*

*Simon v. FIA Card Services, N.A.*, 732 F.3d 259 (3d Cir. 2013); *Randolph v. IMBS, Inc.*, 368 F.3d 726 (7th Cir. 2004).

In *Randolph*, the Seventh Circuit held that a "demand for immediate payment while a debtor is in bankruptcy" violates the FDCPA "in the sense that it asserts that money is due, although, because of the automatic stay (11 U.S.C. § 362) . . . it is not." 368 F.3d at 728. Judge Easterbrook, writing for the *Randolph* court, analyzed several provisions of the two statutes to determine whether any irreconcilable conflict existed between the two. Finding none, the court reasoned that because "[i]t is easy to enforce both statutes, and any debt collector can comply with both simultaneously," the FDCPA claim should be allowed to proceed. *Id*. at 730. In *Simon*, the Third Circuit followed the Seventh Circuit's lead. Citing *Randolph*, the *Simon* court held that when "FDCPA claims arise from communications a debt collector sends a bankruptcy debtor in a pending bankruptcy proceeding, and the communications are alleged to violate the Bankruptcy Code or Rules, there is no categorical preclusion of the FDCPA claims." 732 F.3d at 274.

The district courts within the Eighth Circuit facing this issue have tended to follow the reasoning of the Seventh and Third Circuits, that is, that the Bankruptcy Code does not preclude FDCPA liability for automatic stay violations. *See Clark v. Brumbaugh & Quandahl, P.C., LLO*, 731 F. Supp. 2d 915, 920–21 (D. Neb. 2010) (noting that "at least three cases from other district courts within the Eighth Circuit" had previously determined that the Bankruptcy Code does not bar consumers from bringing an FDCPA action for alleged violations of the bankruptcy automatic stay provision, and adopting the rationale of those cases); *Drnavich v. Cavalry Portfolio Service, LLC*, No. 05-cv-1022 (PAM/RLE),

2005 WL 2406030 (D. Minn. Sept. 29, 2005) (adopting the Seventh Circuit's analysis in *Randolph*). However, at least one court within this district has held that the Bankruptcy Code does preclude additional recovery for automatic stay violations, albeit under a different statute. *Zimmerman v. Bellows*, 988 F. Supp. 2d 1026 (D. Minn. 2013) (Kyle, J.) (finding that a plaintiff cannot recover under 42 U.S.C. § 1983 for alleged automatic stay violations).

### b.    Analysis

In the absence of binding precedent, the Court analyzes the statutes themselves to determine whether Congress meant for the Bankruptcy Code to supply the sole and exclusive remedy for an automatic stay violation. In doing so, it applies all the ordinary rules and canons of statutory interpretation.

At the outset, the Court notes that the proper analytical framework is not one of preemption (whether the Bankruptcy Code preempts or precludes application of the FDCPA), but rather one of repeal by implication. The doctrine of preemption stems from the Supremacy Clause, and is not implicated in this case. *See Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 477 (2018). "One federal statute does not preempt another. When two federal statutes address the same subject in different ways, the right question is whether one implicitly repeals the other—and repeal by implication is a rare bird indeed." *Randolph*, 368 F.3d at 730; *see also Swinomish Indian Tribal Community v. BNSF Railway Co.*, 951 F.3d 1142, 1153 (9th Cir. 2020) ("The term "preempt," when applied to a conflict between federal laws, is a bit of a misnomer . . . When a case involves the interplay between two statutory schemes created by Congress for different reasons and at different times, we

typically ask whether the later statute *repeals* the prior one."); *In re American River Transp. Co.*, 800 F.3d 428, 433 (8th Cir. 2015) ("A new statute will not be read as wholly or even partially amending a prior one unless there exists a 'positive repugnancy' between the provisions of the new and those of the old that cannot be reconciled . . . The rule is to give effect to both if possible."); *Nat'l Ass'n of Home Builders v. Defs of Wildlife*, 551 U.S. 644, 662 (2007) ("We will not infer a statutory repeal unless the later statute expressly contradicts the original act, or unless such a construction is absolutely necessary in order that the words of the later statute shall have any meaning at all.") (cleaned up).

"The repeal of statutes by implication is not favored." *In re American River Transp. Co.*, 800 F.3d at 433. There are two ways for a court to find that a statute has been repealed, in whole or in part, by implication. There either must be (1) a "clearly expressed congressional intention" to replace the earlier statute with the later one, or (2) provisions in the two statutes that are in irreconcilable conflict, in which case "the later act to the extent of the conflict constitutes an implied repeal of the earlier one." *Id*. (citing cases).[1]

### i.     **Congressional Intent**

"Congressional intent is discerned primarily from the statutory text." *Thigulla v. Jaddou*, 94 F.4th 770, 774 (8th Cir. 2024) (quoting *CTS Corp. v. Waldburger*, 573 U.S. 1, 12 (2014)). The text of the Bankruptcy Code (Title 11 of the U.S. Code) does not discuss

---

[1]     The current Bankruptcy Code was enacted in § 101 of the Bankruptcy Reform Act of 1978 (Pub. L. No. 95-598), whereas the FDCPA was passed as part of the Consumer Credit Protection Act Amendment in 1977 (Pub. L. No. 95-109). Thus, although both statutes were passed by the 95th United States Congress, and both have undergone multiple amendments since their passage, the FDCPA is the earlier statute for purposes of the repeal by implication analysis.

its effect on the scope of the FDCPA. There is no mention of other federal laws in 11 U.S.C. § 103 ("Applicability of chapters"), or in § 362(k)(1) (remedies for the willful violation of the automatic stay provision). In 11 U.S.C. § 110(k) (discussing the bankruptcy court's contempt power and penalties for those who negligently or fraudulently prepare petitions), the Bankruptcy Code states that "[n]othing in this section shall be construed to permit activities that are otherwise prohibited by law, including rules and laws that prohibit the unauthorized practice of law."

A plain reading of the text of Title 11 thus does not support the theory that Congress intended for the Bankruptcy Code to repeal and replace the FDCPA. If anything, § 110(k) suggests that Congress contemplated and accepted a certain degree of overlap between the Bankruptcy Code and other pre-existing consumer protection laws.

Not finding an "explicit statement by Congress" in the text of the Bankruptcy Code, the Court looks for evidence of Congressional intent in the legislative history of the statute. *Scalia v. Red Lake Nation Fisheries, Inc.*, 982 F.3d 533, 535 (8th Cir. 2020). In this case, the legislative history is further evidence against a repeal by implication. Both statutes were passed by the same Congress, and nothing in the history suggests that the drafters of the Bankruptcy Reform Act intended it to limit the reach of the FDCPA passed in their previous session. To the contrary, at least one group of legislators held the view that the Bankruptcy Reform Act was not intended to be a consumer protection law. "The bankruptcy rate among consumers has risen accordingly, but without the required provisions in the Bankruptcy Act to protect those who need bankruptcy relief. This bill

16

makes bankruptcy a more effective remedy for the unfortunate consumer debtor. This is not primarily a debtor's bill, however." H.R. Rep. No. 95-595, at 5 (1977).

Further, in the more than 45 years that the two statutes have co-existed, Congress has made several rounds of amendments to each. The FDCPA most notably was amended by the Fair Debt Collection Practices Act Amendment in 1986 (Pub. L. 99-361) and the Dodd-Frank Wall Street Reform and Consumer Protection Act in 2010 (Pub. L. 111-203).[2] The Bankruptcy Code was most notably amended by the Bankruptcy Reform Act of 1994 (Pub. L. 103-394) and the Bankruptcy Abuse Prevention and Consumer Protection Act in 2005 (Pub. L. 109-8).[3] In no amendment has Congress explicitly or clearly stated an intent for either law to limit the other. The inevitable conclusion is that Congress developed the statutes to address different problems, and that the potential for the schemes to overlap was not a concern.

Finally, the Court considers whether the result of enforcing both statutes would lead to a result seemingly at odds with the congressional intent behind them. *See Watt v. Alaska*, 451 U.S. 259, 266–67 (1981) (where two statutes apply to the same facts, courts should consider "the circumstances of the enactment of particular legislation" when determining whether the later statute impliedly repeals the former). While Congress set out in the

---

[2]     15 U.S.C. § 1692e was also amended by Pub. L. 104-208, 110 Stat. 3009-425.

[3]     The following acts have also amended 11 U.S.C. § 362 since the passage of the Bankruptcy Reform Act: Pub. L. 97-222, 96 Stat. 235; Pub. L. 99-509, 100 Stat. 1911; Pub. L. 99-554, title II, 100 Stat. 3115–16; Pub. L. 101-311, 104 Stat. 267, 269; Pub. L. 101-508, 104 Stat. 1388-28; Pub. L. 105-277, 112 Stat. 2681–886; Pub. L. 109-304, 120 Stat. 1706–07; Pub. L. 109-390, 120 Stat. 2696; Pub. L. 111-327, 124 Stat. 3558–59; Pub. L. 116-189, 134 Stat. 970.

FDCPA to eliminate abusive debt collection practices that were plaguing consumers (15 U.S.C. § 1692), the Bankruptcy Code was "not primarily a debtor's bill" (Report No. 95-595), and instead creates and maintains "the delicate balance of a debtor's protections and obligations." *Midland Funding*, 581 U.S. at 233–34. As discussed further *infra*, not every violation of the automatic stay provision can be remedied through the Bankruptcy Code. For example, a creditor who pursues a collection action in state court while a stay is in place could conceivably do so without willfully violating the Bankruptcy Code. *See* 11 U.S.C. § 362(k) (permitting recovery for "willful" violations). In such a scenario, the debt collector might exert pressure on the debtor to pay their debt outside of the oversight and protections of the bankruptcy court, and may cause the debtor to incur additional legal fees or risk potentially severe consequences. In such a case, the debtor has no remedy under the Bankruptcy Code itself. This is exactly the kind of scenario that a strict liability consumer protection statute like the FDCPA is designed to remedy. Thus, recognizing FDCPA liability for automatic stay violations furthers, rather than undermines, the goals of the Bankruptcy Code by disincentivizing collection activity outside of the framework of bankruptcy policies and procedures.

In the absence of clear congressional intent that the Bankruptcy Code has implicitly repealed the FDCPA, the Court must determine whether the provisions of both statutes at issue here are in direct and irreconcilable conflict such that both cannot be enforced in this case. *See Simon*, 732 F.3d at 278 ("Finding no broad categorical preclusion, we turn to the narrower question of whether the Simons' specific allegations present such a conflict with the Bankruptcy Code and Rules as to preclude their FDCPA claims.").

ii.   **Irreconcilable Conflict**

The mere existence of overlapping prohibitions or protections does not rise to an irreconcilable conflict under the law. *United States v. Davis*, 978 F.2d 415, 420 (8th Cir. 1992) (finding that the Wiretap Act did not implicitly repeal the Communications Act of 1934, even though both statutes prohibit some of the same conduct, and permitting prosecution under both statutes).

The question is whether the provisions of the FDCPA (15 U.S.C. § 1692 *et seq.*) relevant to the claims here conflict directly and irreconcilably with the bankruptcy automatic stay provision (11 U.S.C. § 362). In *Randolph*, Judge Easterbrook carefully laid out the differences and similarities between the provisions at issue in reaching his ruling:

|  | **Bankruptcy (§ 362)** | **FDCPA (§ 1692 *et seq.*)** |
|---|---|---|
| **Who** | Anyone | Debt collector only |
| **Scienter** | Willfulness | Strict liability (§ 1692e(2)(A)) |
| **Defense** | None | Bona fide error plus due care (§ 1692k(c)), or reliance on FTC opinion (§ 1692k(e)) |
| **Statutory Damages** | None | $1,000 maximum (§ 1692k(a)(2)(A)) |
| **Compensatory Damages** | Yes | Yes (§ 1692k(a)(1)) |
| **Punitive Damages** | Yes | No |
| **Cap on Class Recovery** | No | Yes (§ 1692k(a)(2)(B)(ii)) |

| Maximum Recovery | No | Yes, $500,000 or 1% of net worth, whichever is less (§ 1692k(a)(2)(B)(ii)) |
|---|---|---|
| Attorneys' fees to debtor | Yes[4] | Yes (§ 1692k(a)(3)) |
| Attorneys' fees to creditor | No | Yes (§ 1692k(a)(3)) |
| Statute of limitations | None (laches defense only) | One year (§ 1692k(d)) |

368 F.3d at 730.

The two statutes are clearly both different and overlapping: "the [Bankruptcy] Code covers all persons, not just debt collectors, and all activities in bankruptcy; the FDCPA covers all activities by debt collectors, not just those affecting debtors in bankruptcy." *Id*. The most relevant area of difference, for purposes of the issues in this case, is the scienter element. QLF argues that because the FDCPA is a strict liability statute, allowing an FDCPA claim would create a backdoor to proving an automatic stay violation without meeting the Bankruptcy Code's willfulness requirement. Because such an outcome would contravene § 362, QLF asserts there is an irreconcilable conflict between these provisions of the statutes.

The argument that permitting an FDCPA claim to proceed would create a backdoor for easier recovery from automatic stay violations is unavailing. As Judge Easterbrook

---

[4]     The *Randolph* court wrote "no" for whether § 362 allows for attorneys' fees. 368 F.3d at 730; *but see* 11 U.S.C. § 362(k)(1) (an injured party may recover costs and attorneys' fees upon a showing of a willful violation).

noted, "they are simply different rules, with different requirements of proof and different remedies." *Randolph*, 368 F.3d at 732.

Most importantly, it is possible for debt collectors to comply with both the Bankruptcy Code and the relevant provisions of the FDCPA, and QLF does not argue otherwise. The specific allegations at issue here are violations of 15 U.S.C. § 1692d (harassment or abuse); § 1692e (false or misleading representations); § 1692e(5) (the threat to take action that cannot legally be taken); and § 1692f (unfair practices). These provisions of the FDCPA are not irreconcilable with the Bankruptcy Code. As explained by the *Randolph* court, "whether overlapping and not entirely congruent remedial systems can coexist is a question with a long history at the Supreme Court, and an established answer: yes." 368 F.3d at 731 (citing cases).

The Court finds that Congress has never clearly expressed, nor even implied, an intent to repeal the FDCPA with the Bankruptcy Code. The Court further finds that where, as here, a plaintiff alleges that a debt collector pursued a state collection action in violation of the automatic stay provision, FDCPA enforcement does not irreconcilably conflict with enforcement of the Bankruptcy Code. Because debt collectors can comply with both statutes, both must be given effect. *See In re American River Transp. Co.*, 800 F.3d at 433. Because both statutes must be given effect, and the pleading rules permit alternative theories of liability, the Court denies QLF's motion to dismiss the FDCPA claims predicated on an automatic stay violation.

## 2.    FDCPA Claim for Improper Communications

The FDCPA prohibits "communication" with a consumer "in connection with the collection of any debt," if the debt collector "knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address." 15 U.S.C. § 1692(a)(2); *Ojogwu v. Rodenburg Law Firm*, 26 F.4th 457, 460 (8th Cir. 2022). To survive a motion to dismiss on this claim, Ms. Nelson must plausibly allege that: (1) she was represented by an attorney with respect to the debt; (2) the defendant knew she was represented by an attorney with respect to the debt; (3) the defendant communicated with her, and; (4) the defendant was not authorized to communicate with her, either by consent or by a court. *Montgomery v. Shermeta, Adams & Von Allmen, P.C.*, 885 F. Supp. 2d 849, 854–55 (W.D. Mich. 2012); *also Gattison v. Credit Control, LLC*, No. 4:23-cv-157, 2023 WL 4404926, at *2 (E.D. Mo. July 7, 2023); *see Schmitt v. FMA Alliance*, 398 F.3d 995, 997 (8th Cir. 2005) (per curium) (a plaintiff must allege the defendant's knowledge of the representation prior to the communication).

Ms. Nelson alleges the following facts in support of her FDCPA improper communication claim:

- "On May 17, 2023, the Court mailed via first class mail a notice to Defendant University notifying it of Plaintiff's bankruptcy via the Bankruptcy Noticing Center." (Am. Compl. ¶ 12.)

- "On or about June 8, 2023, Plaintiff added Defendant Quigley to Plaintiff's bankruptcy matter." (*Id.* ¶ 35.)

- "Defendants then received an email from Plaintiff's bankruptcy counsel dated June 23, 2023, providing additional information concerning Plaintiff's bankruptcy." (*Id.* ¶ 37.)

- "Defendants knew or should have known through its bankruptcy scrub systems or should have known from the communications received from the bankruptcy Court and direct communications from her bankruptcy counsel that Plaintiff was represented by an attorney, specifically her bankruptcy counsel, Walker & Walker Law Office Ltd." (*Id.* ¶ 38.)

- "Defendant Quigley's July 12, 2023, communication to the Dakota County Court referencing the collection lawsuit was sent directly to Plaintiff, in violation of 15 U.S.C. § 1692c, when it knew that Plaintiff was represented by an attorney." (*Id.* ¶ 42.)

QLF asks the Court to consider certain exhibits it submitted as attachments to a declaration by Patrick Newman (Newman Decl. [Doc. No. 16]; Second Newman Decl. [Doc. No. 51].) Exhibits A–J, L–N, and Q, are available and publicly filed in the state court collection action docket. Exhibit O is the email sent by Ms. Nelson's bankruptcy counsel to QLF on June 23, 2023. Exhibit R is the email correspondence between QLF and the Dakota County court that is the subject of this claim. The Court considers these exhibits as they are either a part of the public record or do not contradict the complaint, and they are necessarily embraced by the pleadings. *See Glow in One Mini Golf*, 37 F.4th at 1371 (8th Cir. 2022).

QLF argues that the FDCPA improper communications claim should be dismissed for two reasons: (1) that Ms. Nelson fails to adequately allege that QLF had notice of representation; and (2) that the communication alleged was not "in connection with the collection of any debt" within the meaning of the FDCPA.[5]

### a.      Knowledge of Ms. Nelson's Legal Representation

In the Eighth Circuit, a creditor's actual knowledge of a debtor's representation cannot be imputed to its agent. *Reygadas v. DNF Assocs., LLC*, 982 F.3d 1119, 1126 (8th Cir. 2020); *Schmitt*, 398 F.3d at 997. This rule flows from the basic structure of agency law, "which dictates that while the knowledge of the agent is imputed to the principal, the converse is not true." *Schmitt*, 398 F.3d at 997. Accordingly, in this case, the Court limits its analysis to what Ms. Nelson plausibly alleges QLF actually knew with respect to her legal representation, without regard to the knowledge of the University.

Ms. Nelson alleges that QLF was added to the bankruptcy matter on June 8, 2023, and received an email from her bankruptcy counsel on June 23, 2023. (Am. Compl. ¶¶ 35, 37.) The email was sent from Andrew Walker, managing partner, "on Behalf of Walker and Walker Law Offices, PLLC," on the law firm's letterhead, and includes Mr. Walker's MN Attorney Registration Number. (Newman Decl. 154–55.) The email identifies Ms. Nelson, states that she had filed for bankruptcy, and explains that the automatic stay

---

[5]      QLF also argues that Ms. Nelson raised her improper communication claim for the first time at oral argument, and that because the issue was not briefed, she waived it and the Court should not consider it. A plaintiff is not obligated to defend in briefing claims never addressed in a defendants' motion to dismiss, and does not waive a claim by failing to do so. Regardless, the Court has received supplemental briefing from both parties on this issue, rendering the question of waiver moot.

protection "is effective against all creditors" and prohibits acts including "[a]dvancement of court processes to gain or enforce a judgment." (*Id*. at 154.) The email askes recipients who feel that the notice does not apply to them to "reply to this email immediately or call" the firm's number, and instructs recipients to provide their attorneys' contact information if they are represented in the matter. (*Id*. at 154–55.)

The Court finds that Ms. Nelson has plausibly alleged that QLF had notice of her legal representation with respect to the bankruptcy action. In order to satisfy the requirements for a claim under § 1692c(a)(2), that knowledge must be "with respect to the very debt about which" QLF communicated with her. *Gilbert v. TrueAccord Corp.*, 608 F. Supp. 3d 656, 667 (N.D. Ill. 2022).

QLF argues that, as a matter of law, knowledge of Ms. Nelson's legal representation in the bankruptcy proceedings is insufficient to allege knowledge of her representation with respect to the debt at issue in her state court collection action. However, courts have generally held that actual knowledge of active representation by bankruptcy counsel satisfies the knowledge requirements for a § 1692c(a)(2) claim. *See Lewis v. Northwest Collectors, Inc.*, No. 15-cv-3671, 2017 WL 385041, at *6 (N.D. Ill. Jan. 25, 2017) (notice of bankruptcy counsel establishes knowledge of representation for § 1962c(a)(2) purposes); *Mogg v. Jacobs*, No. 15-cv-1142, 2016 WL 1029396, at *3 (S.D. Ill. Mar. 15, 2016) (finding that pleading notice of a bankruptcy filing and associated representation is sufficient for a § 1692c(a)(2) claim to survive a motion to dismiss); *Robin v. Miller and Steeno, P.C.*, No. 4:13-cv-2456, 2014 WL 3734318 at *2 (E.D. Mo. July 29, 2014) (imposing FDCPA liability for continuing communication after the defendant was advised

that the plaintiff had bankruptcy counsel); *Thomas v. Boscia*, No. 1:08-cv-42, 2009 WL 2778105, at *5 (S.D. Ind. Aug. 28, 2009) (finding that a collection firm knew the plaintiff was represented once it received a bankruptcy filing notice).

The Federal Trade Commission is authorized to enforce compliance with the FDCPA, except to the extent that enforcement is specifically committed to another agency under the Consumer Financial Protection Act of 2010. 15 U.S.C. § 1692l(a). In 1988, the FTC published official commentary interpreting the improper communication provision, explaining that "[i]f a debt collector learns that a consumer is represented by an attorney in connection with the debt, *even if not formally notified of this fact*, the debt collector must contact only the attorney and must not contact the consumer." Federal Trade Commission, Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50104 (1988) (emphasis added). The commentary continues to explain that, when a consumer informs the debt collector that an attorney is retained to represent them on other debts, that debt collector has notice regarding the other debts and must deal only with the consumer's attorney for those debts as well.

When an individual commences bankruptcy proceedings, those proceedings generally embrace all monies owed by the debtor. *See, e.g.*, 11 U.S.C. § 362 (a bankruptcy petition automatically stays all other activity involving debts that arose prior to the petition's filing). As the district court in *Mogg* noted, pleading notice of such representation accordingly satisfies the pleading requirements for a § 1962c(a)(2) claim—there is no requirement to plead notice of representation for each specific debt. *See* 2016 WL 1029396, at *3.

26

QLF directs the Court to *Hubbard v. Nat'l Bond and Collection Assocs., Inc.*, as support for its argument that notice of bankruptcy counsel is insufficient to establish knowledge of representation for a specific debt. 126 B.R. 422 (D. Del.), *aff'd*, 947 F.2d 935 (3d Cir. 1991). In *Hubbard*, however, it was undisputed that the debt collector "was unaware of the plaintiff's bankruptcy" and had no actual knowledge of any representation at all. *Id*. at 427. Here, however, it is alleged that QLF received actual notice of representation with respect to the bankruptcy proceedings approximately three weeks before sending the communication at issue.[6]

The Court finds, under these circumstances, that Ms. Nelson had plausibly alleged that QLF knew that she was represented in an ongoing bankruptcy proceeding, and thus had knowledge of her representation for purposes of § 1692c(a)(2) with respect to any debt encompassed by the bankruptcy proceedings.

### b.   Communication in Connection with the Collection of a Debt

QLF next argues that the email sent to the Dakota County Court was not a communication "in connection with the collection of any debt" within the meaning of

---

[6]      The other cases cited by QLF are similarly inapposite. *Graziano*, *Robinson*, and *Goodman*, for example, each dealt with situations where a debt collector had knowledge of a debtor's representation for a specific separate and distinct debt. *Graziano v. Harrison*, 950 F.2d 107, 113 (3rd. Cir. 1991), *overruled on other grounds*, *Riccio v. Sentry Credit, Inc.*, 954 F.3d 582 (3rd Cir. 2020); *Robinson v. Transworld Systems, Inc.*, 876 F. Supp. 385, 390 (N.D.N.Y. 1995); *Goodman v. Southern Credit Recovery, Inc.*, Nos. 97-cv-2385, 98-cv-1174, 1999 WL 14004, at *9 (E.D. La. Jan. 8, 1999). In *Shrestha v. State Credit Adjustment Bureau, Inc*., 117 F. Supp. 2d 142 (D. Conn. 2000), at a hearing after a demand letter was sent by an attorney but before the communication at issue, the "plaintiff appeared pro se and told the court he was representing himself." *Id*. at 146.

§ 1692c(a)(2). Ms. Nelson counters that because the purpose of the communication was to ensure that the collection action would proceed, it was a communication in connection with the collection of a debt.

The FDCPA defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). In determining whether a communication is in connection with the collection of any debt, the Eighth Circuit employs the "animating purpose test." *Heinz v. Carrington Mortgage Servs., LLC*, 3 F.4th 1107, 1112 (8th Cir. 2021) (citing *McIvor v. Credit Control Servs., Inc.*, 773 F.3d 909, 914 (8th Cir. 2014)). "Under this test, for a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor." *Id*. (internal citation omitted).

The animating purpose of a communication is generally a question of fact, and Courts must "look at each communication individually" to determine whether it satisfies the test. *Id*. An explicit demand for payment is not required for a communication to satisfy the test. Rather, courts consider a number of factors when determining the animating purpose of a communication, including the communication's content and context, and the relationship between the parties. *Backlund v. Messerli & Kramer, P.A.*, 964 F. Supp. 2d 1010, 1014 (D. Minn. 2013); s*ee also Heinz*, 3 F.4th at 1112–13; *McIvor*, 773 F.3d at 915. The Seventh Circuit has observed repeatedly that where the only relationship between the parties arose out of the defendant's ownership of the plaintiff's debt, the communication is more likely to satisfy the animating purpose test. *See Gburek v. Litton Loan Servicing LP*, 614 F.3d 380 (7th Cir. 2010); *Ruth v. Triumph Partnerships*¸ 577 F.3d 790 (7th Cir. 2009).

Several courts have held that a "letter that is not itself a collection attempt, but that aims to make such an attempt more likely to succeed, satisfies the animating purpose test." *Randall v. Paul*, 897 N.W.2d 842, 849 (Minn. Ct. App. 2017) (adopting the Eighth Circuit's animating purpose test) (internal citation omitted); *see also Grden v. Leiken Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011); *Gburek*, 614 F.3d at 386.

The communication at issue here is QLF's July 12, 2023 email to the Dakota County Dourt. The email, from Sarah B. Quigley, reads:

> This letter is not being submitted to the Court to violate 11 USC 362, but simply to inform the Court that I will not be attending the hearing scheduled by the Court on 6/14/2023 for a date of 7/17/2023 at 9:00 AM due to a conflict, as I am already scheduled to be in Washington County on another matter at that same time.

(Second Newman Decl. at 3.) The subject line of the email states the name and court file number for the state collection action, as well as QLF's internal file number for the case. The bottom of the email indicates that Ms. Nelson is copied directly, and includes her full name and home address. (*Id*.)

The Court finds that Ms. Nelson has sufficiently pled a communication in connection with the collection of a debt to overcome the motion to dismiss. Several facts, as alleged, weigh in favor of finding that the July 12, 2023 email satisfies the Eighth Circuit's animating purpose test. The relationship between Ms. Nelson and QLF is wholly defined by her debt to the University. The email itself is a clear reminder of an upcoming hearing on the debt collection action, and scheduling the hearing is a necessary part of a strategy to induce payment of the debt. As noted by this Court in *Ojogwu v. Rodenburg Law Firm*, No. 19-cv-563 (PJS/TNL), 2019 WL 6130450 (D. Minn. Nov. 19, 2019), the

fact that this was a court-facing email does not shield the communication from the § 1692c(a)(2) inquiry.  2019 WL 6130450 at *4. Further, this is a case where the plaintiff alleges injury and trauma caused by the unlawful continuation of court processes in the same collection action, and the email makes no effort to cancel the existing hearing date. Considering the context as alleged, Ms. Nelson has plausibly alleged that such voluntary communication to the court about a future hearing could be intended to pressure a consumer in a manner that makes collection more likely to succeed. *See Randall*, 897 N.W.2d at 849. Accordingly, the Court denies QLF's motion to dismiss Ms. Nelson's § 1692c(a)(2) claim.

### D.  Reference to Bankruptcy Court

As an alternative to dismissal under Rules 12(b)(1) and 12(b)(6), the Defendants move the Court to refer this matter to the bankruptcy court. The Court's discretion to refer and withdraw the reference from the bankruptcy court is defined by statute:

> Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title. . .

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. §§ 157(c)(2), 157(d). The guiding factors for a court to consider in exercising its discretion include: (1) whether the claim is "core" or "non-core," (2) the efficient use of

judicial resources, (3) the existence of a jury trial demand, and (4) the prevention of delay. *Kelley*, 464 B.R. at 861 (citing cases).

When determining whether to refer a case involving a claim for an automatic stay violation to the bankruptcy court, district courts often consider whether good cause likely exists for withdrawal of the reference under § 157(d). For example, in *Barton*, Judge Davis declined to refer a case to the bankruptcy court after finding that "good cause exists to withdraw the matter" and that the plaintiff "would nonetheless file a motion to withdraw the proceeding" after a referral. 2012 WL 4449860, at * 9. Similarly in *DuBois v. Ford Motor Credit Co.*, No. 00-cv-1446 (PAM/SRN), 2001 WL 423057, at *1 (D. Minn. Jan. 19, 2001), Judge Magnuson declined to refer a matter after noting that one of the parties had requested that any potential jury trial on related FDCPA claims be held in the district court. On the other hand, when the bankruptcy claims are not accompanied by federal non-bankruptcy claims, district courts generally exercise discretion in favor of referral. *See, e.g.*, *Reinhardt*, 2022 WL 161571, at *2 (referring a matter where the only non-bankruptcy claim was a state law claim, and distinguishing *Barton* and *DuBois* on that basis).

Causes of action for automatic stay violations are considered to be core proceedings under the Bankruptcy Code. *In re Fine*, 285 B.R. 700, 701 (Bankr. D. Minn. 2002); *See In re McDougall*, 587 B.R. 87, 90 (B.A.P. 8th Cir. 2018) ("A core proceeding is one that arises only in bankruptcy or involves a right created by federal bankruptcy law."). Related proceedings, which exist outside of the bankruptcy context, are considered to be non-core proceedings. *In re McDougall*, 587 B.R. at 90. This case involves both core (the alleged

31

violation of the automatic stay under § 362) and non-core (the alleged FDCPA violations and tort claims) proceedings. That factor is accordingly neutral on the question of referral.

The remaining factors weigh in favor of exercising the Court's discretion not to refer the matter to bankruptcy court. Ms. Nelson has alleged claims under federal statutes outside of the Bankruptcy Code, which for the reasons stated *supra* have survived the pleading stage of this lawsuit. She has objected to referral, and would presumably move to withdraw the case upon a such a referral. She has also made a jury trial demand. The Court finds that concerns for judicial efficiency and reduction of delay weigh in favor of retaining jurisdiction, and accordingly declines to refer the matter to the bankruptcy court.

### E.    Supplemental Jurisdiction

A federal district court has supplemental jurisdiction over "all other claims," including state tort claims, that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). There are four circumstances under which a federal court may decline to exercise its supplemental jurisdiction authority: (1) if the state claim raises a novel or complex issue of state law; (2) if the state claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) if the district court has dismissed all claims over which it has original jurisdiction; or (4) if other compelling reasons for declining jurisdiction exist. *Wong v. Minnesota Dept. of Human Servs.*, 820 F.3d 922, 931 (8th Cir. 2016); U.S.C. § 1367(c).

In this case, both Defendants request that the Court decline to exercise its supplemental jurisdiction over Ms. Nelson's Intrusion Upon Seclusion claim after dismissal of the federal claims. For the reasons stated, the Court has ruled that the federal claims survive dismissal. Accordingly, the Court will exercise supplemental jurisdiction over Count 3, the state law claim of Intrusion Upon Seclusion.

## III.   ORDER

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

    **A.**    Defendant Quigley Law Firm, PLLC's Motion to Dismiss [Doc. No. 28] is **DENIED**; and

    **B.**    Defendant St. Catherine University's Motion to Dismiss [Doc. No. 32] is **DENIED**.

**IT IS SO ORDERED.**

Dated: May  21, 2024                          /s/ Susan Richard Nelson
                                                  SUSAN RICHARD NELSON
                                                  United States District Judge